**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT STEIN, | ) | CASE NO. 3:20-CV-02722-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN ED SHELDON, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.     Introduction

Petitioner, Scott Stein, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Stein is an Ohio prisoner who is currently serving an aggregate 20-year prison term for aggravated possession of drugs, having weapons under a disability, and receiving stolen property. Stein asserts seven grounds for habeas relief. (ECF No. 1). Respondent, Ed Shelden, filed a return of writ on April 19, 201. (ECF No. 9). Stein filed a traverse on July 19, 2021. (ECF No. 13).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Stein's petition and other case-dispositive motions. Because Stein has presented only procedurally defaulted and meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.     Relevant Factual Background

The Ohio Court of Appeals for the Third Appellate District set forth the following facts[1] on direct appeal:

> {¶ 2} On November 9, 2016, Chief of Police Glass of the Village of Botkins received a phone call from an officer at the Wapakoneta Police Department regarding a woman named Megan Donnelly, for whom there was an active warrant for theft, and requested his assistance in obtaining her. Chief Glass was informed that Donnelly was en route to a local motel, driving a white Ford Expedition with California license plates, and that she was suspected to be hauling a large amount of methamphetamine in the vehicle. Upon arriving at the motel, Chief Glass encountered Donnelly unloading the vehicle in question. He advised Donnelly that there was an outstanding warrant for her arrest and detained her on the warrant. He asked to whom the vehicle belonged. Donnelly indicated that Appellant Stein had leased the car through a rental agency. A subsequent search of the vehicle revealed a rental contract, which confirmed that Stein had leased the vehicle from a location in Nevada.

> {¶ 3} Chief Glass arranged for another officer to transport Donnelly to the Wapakoneta Police Department. He was subsequently alerted by the motel management upon cleaning the room of suspicious items in the nightstand. Chief Glass examined the items and, based upon his experience in law enforcement, he suspected them to be methamphetamine and related drug paraphernalia. He performed a field test, which yielded a positive result for methamphetamine and weighed the substance at 44 grams.

> {¶ 4} Upon further investigation, it was discovered that Donnelly first became acquainted with Stein as her drug dealer in the Summer of 2016. At one point she had traded at least four firearms that she had stolen from Joseph Brown, an individual with whom she was living, for drugs from Stein. Donnelly eventually moved to a motel after Brown asked her to leave.

> {¶ 5} Around early November of 2016, Stein bought Donnelly a plane ticket to travel with him to Nevada, where he obtained a

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

large amount of methamphetamines contained in [a] black bag with white lettering. Stein and Donnelly drove back to Ohio from Nevada in the Ford Expedition rental car with the drugs hidden in back quarter panels. Stein gave Donnelly a portion of the methamphetamine for her assistance. Upon arriving in Celina, Stein directed Donnelly, who was driving at the time, to a residence where he had her drop him off around midnight on November 9, 2016. He advised Donnelly to change motel locations to evade law enforcement and gave her money and the use of the rental car to do so. Donnelly arrived at the motel in Botkins shortly thereafter.

{¶ 6} At the time, the Grand Lake Task Force already had an open investigation on Stein, and his residence was under surveillance via a pole camera. Investigators Justin Chisholm and Lance Crum were contacted on November 9, 2016 by Wapakoneta law enforcement informing them that Donnelly was in custody and had a large quantity of methamphetamine in her possession. Investigators Chisholm and Crum spoke to Donnelly, who relayed the events of the prior days' travel out of state. The investigators decided to apply for a search warrant for Stein's residence in Celina. Due to the fact that another criminal case was pending in Logan County implicating Stein, which involved felonious assault with a firearm and having a weapon under disability charges, the investigators decided to use the Auglaize County Special Response Team and asked for a no knock warrant.

{¶ 7} Law enforcement executed the search warrant around 12:30 a.m. on November 10, 2016. They located Stein and his girlfriend, Kristy Schulte, in the basement and two children in the upstairs bedrooms. Stein was taken into custody. Ms. Schulte confirmed that Stein had been away for a period of time and had returned around midnight the night before. Investigator Chisholm searched the basement and discovered a vial of white powder, which tested positive for cocaine according to an initial field test, but no other controlled substances were found. Law enforcement had already ascertained from viewing the surveillance from the pole camera that Stein had been driving a Toyota Camry that day. Information was obtained that the Toyota Camry was located at Schulte's apartment across town. Schulte gave consent to search the apartment.

{¶ 8} There, law enforcement found a locked safe and a Beretta 12–gauge shotgun in the master bedroom. Law enforcement had also located the Toyota Camry. A K–9 unit alerted and indicated to the safe and the Toyota Camry. The vehicle was impounded and

the safe was placed into evidence until a search warrant could be obtained. After the warrant was executed, a subsequent search revealed a Colt Lawman 357 revolver and an empty plastic container in the safe. In addition, a black bag with white lettering containing a large quantity of suspected methamphetamine, a Remington 1100 12–gauge shotgun, and a Mossberg 510 20–gauge shotgun were found in the trunk of the Toyota Camry. A field test of the substance tested positive for methamphetamine, and was later confirmed to be 1,487 grams of methamphetamine. The firearms were later identified by Joseph Brown as the ones stolen from his home when Donnelly was living with him.

*State of Ohio v. Stein,* No. 10–17–13, 2018-Ohio-2345, ¶¶ 2-8, 2018 WL 3026049 (3rd Dist. Ohio June 18, 2018).

## III.    Relevant State Procedural History

### A.    Indictment

Stein was indicted on November 17, 2016, for:

> Count 1: aggravated possession of drugs, to wit: methamphetamine, in violation of R.C. 2925.11(A), 2925.11(C)(1)(e), a felony of the first degree, with a major drug offender specification and a forfeiture of an automobile in a drug case specification attached;

> Count 2: possession of cocaine, in violation of R.C. 2925.11(A), 2925.11(C)(4)(a), a felony of the fifth degree;

> Counts 3 through 6: having a weapon under disability, in violation of R.C. 2923.13(A)(2), 2923.13(B), each a felony of the third degree, and each with a weapon forfeiture specification;

> Count 7 through 10: receiving stolen property, in violation of R.C. 2913.51(A), 2913.51(C), each a felony of the fourth degree.

(ECF No. 9-1, PageID #: 163-173, Ex. 1). At arraignment, Stein plead not guilty to all charges.

(*Id.* at PageID #: 172, Ex. 3).

### B.    Motions to Suppress

4

On June 12, 2017, with a strong caveat that he was doing so against his legal judgement and only at the request of Stein, Stein's appointed counsel filed several pre-trial motions, including five motions to suppress evidence. (*Id.* at PageID #: 196, Ex. 10; PageID #: 209, Ex. 13; PageID #: 232, Ex. 15; PageID #: 269, Ex. 22; PageID #: 274, Ex. 24). Four of these motions were overruled by the trial court and one was withdrawn by counsel prior to trial. (*Id.* at PageID #: 207, Ex. 12; PageID #: 266, Ex. 21; and ECF No. 9-2, PageID #: 1159, 1168). Only one motion to suppress is at issue on this habeas petition – that is Stein's motion to suppress the evidence found in the Toyota Camry. (ECF No. 9-1, PageID #: 232, Ex. 15). The State opposed the motion. (*Id.* at PageID #: 237). During the motions hearing on September 5, 2017, Stein's counsel withdrew the motion for lack of standing. (*Id.* at PageID #: 207, Ex. 12).

### C. Trial and Guilty Verdict

On September 6, 2017, the prosecution entered a nolle prosequi on Count Two, fifth degree possession of cocaine, and the weapon forfeiture specifications on Counts Three, Four, Five, and Six. (*Id.* at PageID #: 287, Ex. 27). The matter proceeded to trial on the remaining counts on September 6, 7, and 8, 2017. The jury found Stein guilty on Counts One, Four, Five, Six, Eight, Nine, and Ten and not guilty on Counts Three and Seven. (*Id.* at PageID #: 288-89, Ex. 28). Additionally, the jury found that Stein was a "Major Drug Offender" and that the 1999 Toyota Camry was used to facilitate Count One. (*Id.* at PageID #: 289, Ex. 28).

On October 11, 2017, the trial court sentenced Stein to an aggregate term of fourteen years in prison, to run consecutive to Stein's six-year prison term imposed in a separate case arising out of Logan County, for a total term of incarceration of twenty years. (*Id.* at PageID #: 293, Ex. 29).

### D. Direct Appeal

On appeal, Stein raised five assignments of error:

1. The trial court abused its discretion when it did not provide a substitution of appointed counsel after Stein demonstrated that a breakdown in the attorney client relationship occurred. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Section 10 and 16 of the Ohio Constitution; *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988); September 5, 2017, Tr. 13-14; Volume I, Tr. 12.

2. Scott Stein received ineffective assistance of counsel because his attorney repeatedly failed to object to inadmissible, and prejudicial hearsay. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 10 and 16 of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid. R. 403(A); Evid. R. 802; Volume II, Tr. 271, 393, 395-96.

3. Scott Stein received ineffective assistance of counsel because his attorney failed to prevent the jury from learning about other crimes for which he was charged. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10 of the Ohio Constitution; *Strickland v. Washington* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid.R. 403(A); *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981.

4. Scott Stein received ineffective assistance of counsel because his attorney withdrew a meritorious motion requesting that the evidence found in the Toyota Camry be surpressed [sic]. Fourth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10 of the Ohio Constitution; *Strickland v. Washington* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid.R. 403(A); Evid.R. 404(B); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Hill*, 75 Ohio St. 3d 195, 203, 661 N.E.2d 1068 (1996).

5. The cumulative effects of Stein's first assignment of error denied him a fair trial. *State v. Irwin*, 7th Dist. Columbiana No. 07 CO 22, 2009-Ohio-5271, 922 N.E.2d 981; *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987).

(*Id.* at PageID #: 311-12, Ex. 32). The State filed a response brief. (*Id.* at PageID #: 382, Ex. 33). Stein replied in support. (*Id.* at PageID #: 408, Ex. 34).

On the first assignment of error, the Ohio Court of Appeals stated "that the record fails to demonstrate any breakdown in communication or cooperation between Stein and his appointed counsel that would have violated Stein's constitutional right to effective assistance of counsel. Rather, the record indicates that the trial court considered Stein's request for substitute counsel at length, but found the request was neither timely nor supported by good cause." *Stein*, 2018-Ohio-2345, ¶ 30. Accordingly, the court found "that Stein was not prejudiced and the trial court did not abuse its discretion by denying Stein's request for new counsel." *Id.*

On the second assignment of error, the Court of Appeals agreed with Stein that certain statements made by the testifying officer should have been excluded as hearsay, but that given the "additional legitimate evidence…it is unreasonable to believe that a juror would rely solely on two hearsay statements[.]" *Id.* at ¶ 42. The court concluded that Stein had not demonstrated that "but for appointed counsel's failure to object on this basis, there is a reasonable probability that the result of the proceedings would have been different." *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). For the remainder of Stein's arguments regarding trial counsel's failure to object, the court found that such failures "may have been sound trial strategy" and, alternatively, were "harmless beyond a reasonable doubt in view of other evidence establishing Stein's guilt." *Id.* at ¶ 52 (citations omitted).

On the third assignment of error, the Court of Appeals agreed with Stein that his trial counsel should have raised an objection to the admission of at least a portion of language in the Logan County indictment, but found that Stein failed to demonstrate "that but for appointed counsel[']s actions with respect to the Logan County indictment, there is a reasonable probability

that the result of the proceedings would have been different. Accordingly, we conclude that Stein has failed to establish that his trial counsel was ineffective on this basis and we overrule the third assignment of error." *Id*. at ¶ 57.

On the fourth assignment of error, the Court of Appeals stated that "Stein fails to point to any portion of the record that would indicate that appointed counsel's decision not to concede ownership of the Toyota Camry and to withdraw the suppression motion was anything other than sound trial strategy." *Id.* at ¶ 37. Accordingly, Stein's fourth assignment of error was overruled. *Id*.

Finally, as to Stein's fifth assignment of error, the Court of Appeals stated that "Stein did not demonstrate that appointed counsel made errors so serious to rise to the level of deficient performance and to substantiate a conclusion that appointed counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id* at ¶ 58

Accordingly, the Ohio Court of Appeals affirmed Stein's conviction and sentence. *Id.* at ¶ 59.

### E. Appeal to the Ohio Supreme Court

Stein appealed through counsel to the Ohio Supreme Court on August 2, 2018. (ECF No. 9-1, PageID #: 471, Ex. 36). Stein's memorandum in support of jurisdiction raised the following propositions of law:

> **Proposition of Law I:** A defendant is denied the right to counsel when a trial court refuses to replace appointed counsel after the defendant demonstrates justifiable dissatisfaction with the attorney. Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

> **Proposition of Law II:** A defendant receives ineffective assistance of counsel when his or her lawyer fails to object to inadmissible, and prejudicial hearsay. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10, of the

8

Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**Proposition of Law III:** A defendant receives ineffective assistance of counsel when his or her lawyer fails to prevent the jury from learning about other crimes for which he was charged. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10, of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

(ECF No. 9-1, PageID #: 474, Ex. 37). The State opposed jurisdiction (*id*. at PageID #: 491, Ex. 38), and on October 24, 2018, the Ohio Supreme Court declined jurisdiction (*id.* at PageID #: 505, Ex. 39).

### F. Post-Conviction Petition

On November 27, 2018, Stein petitioned through counsel to vacate and set aside his judgment pursuant to R.C. 2953.21. Stein asserted the following ground for relief:

Scott Stein's conviction and sentence are voidable because he was denied effective assistance of counsel when his attorney withdrew a meritorious motion requesting that the evidence found in the Toyota Camry be suppressed. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Exhibits A, B, C.

(*Id.* at PageID #: 512, Ex. 40). In support, Stein cited to evidence *de hors* the record, i.e. footage from body-cameras. In its opposition, the State conceded that the body-camera footage was not in the record for the direct appeal. (*Id.* at PageID #: 527, Ex. 41). Nonetheless, the State argued that the issue is barred by res judicata. (*Id.* at PageID #: 528, Ex. 41). The State moved for summary judgment of Stein's petition (*id.* at PageID #: 537, Ex. 42) and Stein opposed (*id*. at PageID #: 550, Ex. 43). On March 25, 2019, the court agreed with the State and granted summary judgment, dismissing Stein's petition. (*Id*. at PageID #: 555, Ex. 44).

Stein appealed the decision through counsel on March 25, 2019. (*Id.* at PageID #: 560, Ex. 45). Stein asserted the following ground for relief:

> Scott Stein received ineffective assistance of counsel because his attorney withdrew a meritorious motion to suppress evidence found in his Toyota Camry. Fourth, Sixth and Fourteenth Amendments to the United States Constitution; Sections 1 and 10, Article I of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid.R. 403(A); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Hill*, 75 Ohio St.3d 195, 203, 661 N.E.2d 1068 (1996).

(*Id.* at PageID #: 568, Ex. 46). On March 2, 2020, the Court of Appeals overruled Stein's assignment of error. (*Id.* at PageID #: 658, Ex. 49).

On April 16, 2020, Stein appealed through counsel to the Ohio Supreme Court. (ECF No. 9-1, PageID #: 675, Ex. 50). Stein's memorandum in support of jurisdiction raised the following proposition of law:

> **Proposition of Law:** When considering a postconviction petition, courts must review evidence attached to the petition and independently determine its credibility, even if it has not been formally authenticated.

(ECF No. 9-1, PageID #: 686, Ex. 50). On July 7, 2020, the Ohio Supreme Court declined jurisdiction. (ECF No. 9-1, PageID #: 692, Ex. 52).

### G. Application to Reopen

On August 3, 2020, Stein filed pro se a delayed application to reopen his direct appeal pursuant to Ohio App. R. 26(B). (*Id.* at PageID #: 693, Ex. 53). In his application to reopen, Stein argued that his counsel representing him on his post-conviction petition was ineffective for failing to properly authenticate the evidence submitted with the petition. (*Id.* at PageID #: 695,

Ex. 53). The Court of Appeal denied his application as untimely and meritless. (*Id*. at PageID #: 698-99, Ex. 54). Stein did not appeal that decision to the Supreme Court of Ohio.

## IV. Federal Habeas Corpus Petition

On November 7, 2020, Stein petitioned through counsel that this Court issue a writ of habeas corpus. (ECF No. 1). Stein asserted the following grounds for relief:

> **Ground One**: The trial court abused its discretion when it did not provide a substitution of appointed counsel after Stein demonstrated that a breakdown in the attorney-client relationship occurred. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Section 10 and 16 of the Ohio Constitution; *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988); September 5, 2017, Tr. 13-14; Volume I, Tr. 12.
>
> **Supporting Facts:** Petitioner's trial counsel did not visit him, nor could be reached by his family. Trial counsel failed to file motions, which he represented to him would be filed. Trial counsel filed critical pre-trial motions on 6/12/17, thereafter, withdrew the motions in Sept. 2017. Trial counsel did not prepare for trial.
>
> **Ground Two**: Scott Stein received ineffective assistance of counsel because his attorney repeatedly failed to object to inadmissible, and prejudicial hearsay. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 10 and 16 of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid.R. 403(A); Evid.R. 802; Volume II, Tr. 271, 393, 395-96.
>
> **Supporting Facts:** Petitioner's trial counsel failed to object to the state's repeatedly introduced prejudicial hearsay. This included several unnamed people testifying that he sold methamphetamine. (Tr. 393) This evidence was inadmissible and flagrantly prejudicial, amounting to ineffective assistance of counsel.
>
> **Ground Three**: Scott Stein received ineffective assistance of counsel because his attorney failed to prevent the jury from learning about other crimes for which he was charged. Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10 of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373

(1989); Evid.R. 403(A); *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981.

 **Supporting Facts:** Petitioner's counsel was ineffective because he failed to prevent the jury from hearing about prejudicial information contained in a Logan County indictment.

**Ground Four**: Scott Stein received ineffective assistance of counsel because his attorney withdrew a meritorious motion requesting that the evidence found in the Toyota Camry be suppressed. Fourth, Sixth and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10 of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid.R. 403(A); Evid.R. 404(B); *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Hill*, 75 Ohio St.3d 195, 203, 661 N.E.2d 1068 (1996).

 **Supporting Facts:** Petitioner's counsel was ineffective for withdrawing a critical motion to suppress where there was a great possibility that the court would have suppressed the evidence.

**Ground Five**: The cumulative effects of Stein's first four assignments of error denied him a fair trial. *State v. Irwin*, 7th Dist. Columbiana No. 07 CO 22, 2009- Ohio-5271, 922 N.E.2d 981; *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987).

 **Supporting Facts:** The petitioner was denied a fair trial due to the cumulative errors. Additionally, his trial counsel performance was deficient rendering the jury's verdict unworthy of confidence.

**Ground Six**: Scott Stein received ineffective assistance of counsel because his attorney withdrew a meritorious motion to suppress evidence found in his Toyota Camry. Fourth, Sixth, and Fourteenth Amendments to the United States Constitution; Sections 1 and 10, Article I of the Ohio Constitution; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); Evid.R. 403 (A); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Hill*, 75 Ohio St.3d 195, 203, 661 N.E.2d 1068 (1996).

 **Supporting Facts:** Petitioner's trial counsel was ineffective because he withdrew a meritorious motion to suppress evidence found in his Toyota Camry.

**Ground Seven**: Ineffective Assistance of Appellate Counsel 26(B).

**Supporting Facts:** Appellate counsel was ineffective in failing to argue on appeal, Petitioner's trial counsel was ineffective in obtaining video evidence as part of the discovery from the state, thereby, depriving him a fair trial.

(ECF No. 1).

## V.     Legal Standards

### A.      Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Mercer County sentenced Stein, and Mercer County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Stein's § 2254 petition.

### B.      Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809

13

F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

### C.     Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id*. (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### D.     Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state

14

procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806

15

("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence

showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### E.    AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte*

*v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

18

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## VI.    Discussion

### A.  Grounds Four and Five are procedurally defaulted.

In Ground Four, Stein asserts that his trial counsel was ineffective for withdrawing a motion to compel evidence found in the Toyota Camry. (ECF No. 1 at 10). Ground Five alleges that the cumulative errors made by his trial counsel deprived him of a fair trial. (ECF No. 1 at 11). Stein originally raised Grounds Four and Five in his direct appeal to the Ohio Third District Court of Appeals. (ECF No. 9-1, PageID #: 306, Ex. 32). However, after the Court of Appeals affirmed his judgment and conviction, Stein failed to present Grounds Four and Five in his appeal to the Supreme Court of Ohio. (*See id*. at PageID #: 474, Ex. 37).  In order to "fairly present" each of his claims from his direct appeal, Stein was required to present each of his issues to the appropriate courts throughout Ohio's appellate process. *Caver v. Straub,* 349 F.3d 340, 346 (6th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845). The time for presenting these claims to the Ohio Supreme Court has passed. *See* Ohio S.Ct.Prac.R. 7.01(A) (An appellant is

required to file notice of appeal within forty-five days from the entry of the judgment being appealed). Accordingly, Grounds Four and Five are procedurally defaulted.

With respect to Ground Four, Stein asserts that it is not procedurally defaulted because he preserved this issue by raising it again in his post-conviction petition. (*See* ECF No. 13 at 3). However, Stein cannot reinstate a procedurally defaulted issue by re-raising it in a post-conviction matter. Stein contends that his procedural default of this claim was somehow cured by the fact that he raised this argument in a subsequent filing after he had failed to timely raise it with the Ohio Supreme Court on direct appeal.  However, were the undersigned to accept this argument, it would effectively eliminate the doctrine in its entirety. Stein offers no further argument to excuse his procedural default. (*See* ECF No. 13).

With respect to Ground Five, Stein acknowledges that he failed to fairly present this issue in the State courts. (ECF No. 13 at 3). Stein offers no argument to excuse his procedural default nor that a miscarriage of justice will occur if the procedural default is not excused. (*See* ECF No. 13).

Thus, Grounds Four and Five should be dismissed.

### B.  Ground Six is Procedurally Defaulted.

Ground Six again alleges that Stein's trial counsel was ineffective for withdrawing a motion to suppress evidence found in the Toyota Camry. (ECF No. 1 at 13). In further explanation, Stein directs the Court to "Exhibit B" attached to his petition, which is the reply brief submitted by his counsel in support of his petition for post-conviction relief. (*See* ECF No. 1-2). Thus, it appears that Stein based his Ground Six on the same argument raised in his post-conviction petition. The state appellate court determined that this claim was barred by res judicata (ECF No. 9-1, PageID #: 674, Ex. 49) and the Ohio Supreme Court declined jurisdiction

(*id*. at PageID #: 692, Ex. 52). Respondent argues that Ground Six is procedurally defaulted as the Ohio appellate court ruled the claim was barred by res judicata. (ECF No. 9 at 13). Stein does not address Respondent's argument.

Ohio's *res judicata* rule bars a defendant from raising in post-conviction review a claim that was or could have been raised on direct appeal. *See State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). *Res Judicata* is an "independent and adequate state ground" that bars habeas review. *See Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001). An exception to the procedural bar of *res judicata* exists if the defendant can put forward material evidence outside the record in a post-conviction petition under Ohio Rev. Code § 2953.21. *State v. Cowan,* 2002-Ohio-7271, ¶ 15, 151 Ohio App. 3d 228, 233, 783 N.E.2d 955, 958, aff'd, 2004-Ohio-1583, ¶ 15, 101 Ohio St. 3d 372, 805 N.E.2d 1085 ("An [ ] exception to *res judicata* exists when a defendant presents 'new, competent, relevant and material evidence *dehors* the record.' ") (additional citations omitted); see *Kenney v. Haviland*, No. 1:04 CV 2194, 2006 WL 2792171, at *11 (N.D. Ohio Sept. 26, 2006) ("[C]ourts have allowed an exception to *res judicata* when a petitioner presents new, competent, relevant and material evidence *dehors* the record."). "[T]he evidence *dehors* the record must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it." *Id.* (citing *State v. Slagle* (Aug. 10, 2000), 8th Dist. No. 76834, 2000 WL 1144947, at * 3).

Ohio's Third District Court of Appeals considered this issue and stated that "[i]n Stein's direct appeal, his fourth assignment of error used nearly identical language to his assignment of error in this appeal." *Stein*, 2020-Ohio-721, ¶ 21 (citing *Stein*, 2018-Ohio-2345, at ¶ 17). The court went on to explain that the issue had been overruled on direct appeal because Stein had failed " 'to point to any portion of the record that would indicate that appointed counsel's

decision not to concede ownership of the Toyota Camry and to withdraw the suppression motion was anything other than sound trial strategy.' " *Id.*

The court then discussed the evidence submitted by Stein in his post-conviction petition.[2] The court found that the doctrine of *res judicata* applied to bar Stein's issue and explained:

> {¶26} Stein does not make an attempt to authenticate or otherwise identify the documents through sworn testimony, such as an affidavit. The only attempt to identify Defendant's Exhibits A, B, and C is in Stein's brief, not an affidavit. This bare allegation is insufficient to demonstrate substantive grounds for relief. *See State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-5242, ¶ 17. Stein makes no claim that his trial counsel failed to discover Defendant's Exhibits A, B, and C. Moreover, Stein does not argue that he could not have appealed the constitutional claim based on the information in the original trial record.
>
> {¶27} Thus, because we do not have a proper foundation upon which to evaluate Defendant's Exhibits A, B, and C, we cannot evaluate the additional evidence and assign it weight. As we cannot properly consider Defendant's Exhibits A, B, and C, we are left with the same record and the same arguments that Stein made in his direct appeal. Stein's petition for postconviction relief is therefore barred by res judicata. Accordingly, the trial court did not err by granting summary judgment.

*Stein*, 2020-Ohio-721, ¶¶ 26-27. This Court agrees with the Ohio appellate court. Stein still has not made any argument that his trial counsel failed to discover Exhibits A, B, and C. In fact, Stein acknowledges that his trial counsel had access to the exhibits. (ECF No. 9-1, Ex. 53). The Sixth Circuit recognizes that "res judicata applies when a defendant who is represented by new counsel on direct appeal fails to raise the issue of ineffective assistance of trial counsel, and the issue could fairly have been determined without resort to evidence outside the record." *Monzo v.*

---

[2] "Defendant's Exhibits A and B are allegedly body camera footage from November 10, 2016, that depicts events prior to the issuance of the search warrant of the Toyota Camry. Defendant's Exhibit C is allegedly the search warrant and affidavits in support of the search warrant for the Toyota Camry." *Stein*, 2020-Ohio-721, ¶ 24 (citations to the record omitted).

*Edwards*, 281 F.3d 568, 576–77 (6th Cir. 2002) (citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 170 (1982)). Here, Stein was represented by new counsel on direct appeal. Stein's new counsel was not prevented from asserting ineffective assistance of trial counsel, and, in fact, he actually asserted ineffective assistance of trial counsel in Stein's direct appeal. Accordingly, *res judicata* was an adequate and independent state procedural ground upon which the state court actually relied to bar consideration of the ineffective assistance of counsel claim asserted in habeas Ground 6. *See id.* (citing *Coleman*, 268 F.3d at 427–29); *Jacobs*, 265 F.3d at, 417; *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001); *Rust*, 17 F.3d at 160). Because Ground Six is barred by *res judicata*, this Court cannot review it on the merits.

Stein does not argue any cause for his procedural default nor that a miscarriage of justice will occur if the procedural default is not excused. (*See* ECF Nos. 1 and 13). Accordingly, Ground Six should be dismissed as it is procedurally defaulted.  (*See* ECF No. 13).

### C.  Ground Seven is Procedurally Defaulted.

Stein's Seventh Ground alleges his appellate counsel was ineffective for failing to attach an affidavit to his appeal authenticating Exhibits A, B, and C in order to permit the review of his claims in post-conviction relief. Stein first raised this ground in an untimely App. R. 26(B) motion. (ECF No. 9-1, PageID #:  Ex. 53). The Ohio Third District Court of Appeals deemed Stein's application for a delayed 26(B) motion as untimely. (ECF No. 9-1, Ex. 54).

In Ohio, a defendant must file an application for reopening within ninety days from journalization of the appellate court's opinion unless the applicant can demonstrate good cause. Ohio R. App. R. 26(B)(1). The Third District Court of Appeals ruled:

> This cause comes before the Court of Appellant's application for delayed reopening of his appeal pursuant to App. R. 26(B). Upon

> consideration, the Court finds that the final judgment on appeal was filed March 2, 2020 and the Appellant's application was filed August 3, 2020. The application was not filed within ninety days as required by App.R. 26(B)(1). Moreover, Appellant's application fails to set forth any good cause or even attempt to justify the untimely filing. See App.R. 26(B)(1) and 26(B)(2)(b).

(St. Ct. Rec., Ex. 54, Page 1). Stein argues that his motion was timely due to the Ohio Supreme Court's general order extending the time in which to file motions and responses due to the Covid-19 pandemic. (*See* ECF No. 13 at 2).

This Court need not determine whether Stein's application to reopen was timely filed in the appellate court as he failed to appeal the appellate court's decision to the Ohio Supreme Court. Stein was required to present this claim to each of the levels of the Ohio appellate process. *Bagley*, 282 F. Supp. 2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Stein can no longer appeal this decision. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i) (requiring that an appeal be filed within forty-five days of the relevant appellate ruling); Ohio S. Ct. Prac. R. 7.01(A)(4)(c) (The Ohio Supreme Court does not permit delayed appeals involving appeals brought pursuant to App. R. 26(B)). As such, Stein did not timely appeal this ground to the Ohio Supreme Court and this ground has been procedurally defaulted. *Boerckel*, 526 U.S. at 847.

Stein does not argue cause for his procedural default nor that a miscarriage of justice will occur if the procedural default is not excused. (*See* ECF No. 13).

Accordingly, Ground Seven should be dismissed.

**D.  Ground One is Meritless**

In Ground One, Stein argues that the trial court abused its discretion when it denied his motion for new counsel. (ECF No. 1 at 3, 7-10).[3] The "last explained state-court judgment" was Stein's direct appeal to the Third District Court of Appeals, which overruled the claim stating:

> {¶ 18} In his first assignment of error, Stein argues that he was denied his right to counsel because the trial court did not grant his request for substitute counsel. Specifically, he contends there was a complete breakdown in communication between himself and appointed counsel and thus, substitute counsel was warranted.
>
> {¶ 19} The decision whether to remove court-appointed counsel and allow substitution of new counsel is within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). An "abuse of discretion" implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).
>
> {¶ 20} An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant "has the right to professionally competent, effective representation." *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, ¶ 30, 792 N.E.2d 757 (7th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). "Competent representation does not include the right to develop and share a 'meaningful attorney-client relationship' with one's attorney." *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, ¶ 12, 776 N.E.2d 1135 (1st Dist.). In order for the court to discharge a court-appointed attorney, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. That said, the right to counsel must be balanced against the trial court's authority to control its docket, as well as its awareness that a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." *United States v.*

---

[3] Although the wording of Ground One reads like an ineffective assistance of counsel claim (asserting that his trial counsel did not visit him, nor could he be reached, and additional complaints regarding trial counsel's representation), the petition directs the Court to "Exhibit A," which is his state appellate court brief discussing his First Assignment of Error. Based on this, Stein appears to be asserting the same claim included in his direct appeal alleging the trial court abused its discretion by not appointing substitute counsel. (*See* ECF No. 1 at 7-10).

*Krzyske*, 836 F.2d 1013, 1017 (C.A.6 1988); *see, also, State v. Lawson*, 8th Dist. Cuyahoga No. 97018, 2012-Ohio-1050, ¶ 24.

*Analysis*

### 1. First Trial Counsel

{¶ 21} The record reflects that Stein had initially retained counsel to represent him. Retained trial counsel filed a notice of representation on November 22, 2016. A jury trial was set to commence on March 1, 2017. At a February 21, 2017 pretrial, Stein appeared with his retained trial counsel, who entered a motion to withdraw from Stein's representation on the grounds that Stein had failed to fulfill his financial obligation to him and Stein's refusal to permit retained counsel to consent to a continuance on his behalf. Retained counsel explained that a continuance was strategically desirable due to the serious nature of the charges, which included the major drug offender specification attached to Count One, and retained counsel's concern that two defense witnesses were still unable to be located and interviewed.

{¶ 22} A transcript of the pre-trial proceeding reveals Stein was argumentative and questioned the veracity of retained counsel's statements regarding the inability to locate defense witnesses and their financial agreement. It is also apparent that Stein misunderstood the calculation of the days which counted toward his speedy trial rights. Stein was adamant that his speedy trial rights had been violated because he had spent 90 days incarcerated while awaiting trial. Days before this pre-trial, retained counsel filed a motion to dismiss on speedy trial grounds, at Stein's behest, which was denied by the trial court because the majority of the days were allocated to Stein's pending case in Logan County. Upon Stein's admission that he had no further payment for retained counsel, the trial court granted the motion to withdraw and had Stein complete an affidavit of indigency so that counsel at State expense could be appointed, despite Stein's continued attempts to interrupt and argue with the trial court during the hearing.

### 2. Second Trial Counsel

{¶ 23} On March 1, 2017, substitute counsel was appointed to represent Stein. The trial court scheduled a new trial date to commence on May 24, 2017. On that date, the jury had been summoned and the parties appeared for trial. Stein's appointed counsel requested several matters be discussed outside the presence of the jury, and informed the trial court that Stein wished to "fire" him as counsel. The trial court inquired of Stein as to his reasons for wanting a new attorney. Stein expressed displeasure with his appointed counsel's purported lack of availability, failure to file motions that *Stein* thought were necessary, and Stein disapproved of the way both his first and second counsel handled

26

his case by "not going forward with [his] wishes." (May 24, 2017 Hrg. at 9). Appointed counsel expressed ethical concerns with Stein wanting him to file motions that counsel believed to be "frivolous," and not based on "good faith." (*Id*. at 11).

{¶ 24} Nevertheless, in the interest of full disclosure, appointed counsel proceeded to set forth *what Stein believed* to be the meritorious basis of these motions, over repeated interruption by Stein, and stated his concerns with the validity of Stein's legal arguments. Appointed counsel noted that in the file of previous counsel was a drafted motion setting forth similar arguments reflecting *Stein's* position on his case, which was never filed by prior counsel presumably because he shared the same sentiment as appointed counsel regarding the lack of merit of the motion. At the conclusion of the hearing, appointed counsel agreed to file Stein's motions in order to avoid further delay of the proceedings, which Stein accepted and agreed to waive his speedy trial rights in order for his motions to be pursued. The trial court again re-scheduled the trial to commence on September 6, 2017.

{¶ 25} Appointed counsel subsequently filed seven motions on Stein's behalf, to which the prosecution responded, and a hearing was held on June 30, 2017. Three of the motions were submitted to the trial court for its ruling. Appointed counsel requested additional time for a reply to be filed on the remaining four motions so that Stein had ample opportunity to review the prosecution's responses.

{¶ 26} On July 14, 2017, the trial court overruled three of the seven motions filed by appointed counsel at Stein's behest. Specifically, Motion No. 5, which sought a transcript of all grand jury testimony based upon Stein's belief that unspecified witnesses gave false and misleading testimony, was overruled on the basis that he failed to provide a particularized need for the transcript. Motion No. 6, which sought suppression of the evidence obtained from the execution of the search warrant of his girlfriend Schutle's apartment, was overruled for lack of standing to raise the motion. The trial court also overruled Motion No. 7, which sought suppression of the evidence obtained by law enforcement from the pole camera surveillance, due to an opinion from this Court, which held that such method of surveillance did not impinge upon an individual's Fourth Amendment protection. *See State v. Duvernay*, 3d Dist. Allen No. 1-16-62, 2017-Ohio-4219, 92 N.E.3d 262.

{¶ 27} On August 7, 2017, appointed counsel filed a reply to the prosecution's response on the remaining motions. The parties appeared before the trial court on the outstanding motions on September 5, 2017, the day before trial. As appointed counsel outlined the basis for each motion, Stein interrupted and argued with appointed counsel's recitation to the trial court. After

appointed counsel was finished speaking, Stein asked for new counsel based upon his disapproval of how appointed counsel handled the motions he requested to be filed. Viewing Stein's complaints as a further attempt to frustrate and delay the proceedings, the trial court overruled Stein's request. The trial court proceeded to hear testimony from a State's witness pertaining to a motion based upon Stein's claim that he was falsely arrested. The trial court then overruled three of the four remaining motions, with the final outstanding motion being withdrawn by appointed counsel for lack of standing.

{¶ 28} At the outset, we note that "when a defendant expresses concerns or complaints regarding appointed counsel, the trial court has a duty to inquire into the nature of the complaint, make such inquiry a part of the record, and make a decision on the record." *State v. Bowman*, 10th Dist. Franklin No. 06AP-149, 2006-Ohio-6146, ¶ 35. Here, the trial court addressed Stein's concerns on the record on each occasion that he raised them. The record demonstrates that the trial court engaged in a meaningful dialogue with Stein and appointed counsel, which resulted in a resolution so that the case could move forward in a timely fashion.

{¶ 29} Despite the accommodations made by the trial court, the prosecution, and appointed counsel, Stein continued to be argumentative with appointed counsel regarding trial strategy based upon Stein's own understanding of how to proceed with his case up until the *third* scheduled trial date. "Defendant and trial counsel's failure to 'see eye to eye' regarding trial strategy is an insufficient basis for removal of appointed counsel." *State v. Hill*, 8th Dist. Cuyahoga No. 105554, 2018-Ohio-279, ¶ 11; *State v. Crew*, 8th Dist. Cuyahoga No. 86943, 2006-Ohio-4102, ¶ 17 ("Hostility, tension, or personal conflict between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify the withdrawal of appointed counsel.").

{¶ 30} In sum, the record fails to demonstrate any breakdown in communication or cooperation between Stein and his appointed counsel that would have violated Stein's constitutional right to effective assistance of counsel. Rather, the record indicates that the trial court considered Stein's request for substitute counsel at length, but found the request was neither timely nor supported by good cause. Therefore, we find that Stein was not prejudiced and the trial court did not abuse its discretion by denying Stein's request for new counsel. Accordingly, the first assignment of error is overruled.

*Stein*, 2018-Ohio-2345, ¶¶ 18-30. The state appellate court ruled that the trial court did not abuse its discretion by refusing to appoint substitute counsel because the record did not demonstrate Stein's request was timely and supported by good cause. *Stein*, 2018-Ohio-2345, ¶30. The appellate court's decision was not an unreasonable application of federal law.

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409 (2006). "[D]efendants who require counsel to be appointed for them[,]" however, do not have the right to counsel of choice. *Id*. at 151. "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011) (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)).

> In analyzing whether a state trial court unreasonably applied clearly established federal law when it denied a defendant's motion to substitute counsel, the following four factors are controlling: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.

*Cobb v. Warden, Chillicothe Corr. Inst.,* 466 F.App'x 456, 460 (6th Cir. 2012) (citing *Henness v. Bagley*, 644 F.3d 308. 321 (6th Cir. 2011)).  If the defendant was erroneously deprived of counsel of his choice, there does not need to be an additional showing of prejudice. *Gonzalez-Lopez*, 548 U.S. at 146.

Stein made his latest request for new counsel the day before trial, which had already been delayed on two previous occasions due to Stein's seeking new counsel. *See United States*

*v. Trujillo*, 376 F.3d 593, 606–07 (6th Cir. 2004) (request made 3 days before trial deemed untimely); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (request made on the day before trial found untimely). Stein had requested new counsel on several previous occasions. Initially, Stein had retained counsel, but just ten days before his scheduled trial, his retained counsel moved to withdraw. The court granted the motion, appointed new counsel, and continued the trial so that Stein's appointed counsel could become familiar with the case. Then, on the morning of trial, while potential jurors waited to be seated, Stein requested new counsel because, he argued, his counsel had not filed several motions that Stein demanded be filed. (ECF No. 9-2 at 19-25). The court addressed Stein's concerns and his appointed counsel stated that he would file the motions that Stein wanted. (*Id.*) Having reached a solution, Stein stated that he no longer had an issue with his counsel. (*See id.* at 26). The court continued the trial to allow time for Stein's counsel to file the requested motions, which he did. Stein's final request for new counsel occurred the day before trial was rescheduled for the second time. (*See id.* at 457). Stein's counsel withdrew the motion to suppress the evidence from the Toyota Camry stating that Stein did not have standing. Counsel explained that it was trial strategy not to admit to standing for the motion because admitting to standing would be an admission to the possession of the evidence of illegal activity found in the car. (*Id.* at 457). Stein disagreed with the matter in which his appointed counsel presented the motions to suppress, and that appointed counsel was withdrawing the motion to suppress related to the evidence found in the Toyota Camry. (*Id.*). The trial court heard from Stein and overruled the motion stating "Mr. Stein, I'm going to overrule your motion for new counsel. In the Court's opinion, your counsel is experienced and doing an incredible job for you. He's rendering effective assistance. We're

going to proceed with this motion hearing." (*Id*. at 458).  Thereafter, the court held the motion hearing and overruled the remaining suppression motions. (*Id.* at 465).

This Court agrees with the appellate court that the record demonstrates that the trial court adequately addressed each of Stein's complaints and resolved each so that the case could move forward. Although Stein continued to argue with the trial court and his appointed counsel as to withdrawal of the motion to suppress the evidence found in the Toyota Camry (*see id.* at 465), Stein's disagreement did not amount to such a complete breakdown in the attorney-client relationship that would have justified a substitution of counsel. "'A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel.'" *Miller v. Carl*, No. 21-11458, 2023 WL 3010169, at *9 (E.D. Mich. Apr. 19, 2023) (quoting *Caldwell v. Phelps*, 945 F. Supp. 2d 520, 537 (D. Del. 2013) (citing *United States v. Goldberg*, 67 F.3d 1092, 1098-99 (3d Cir. 1995); *United States v. Gibbs*, 190 F.3d 188, 207 n.10 (3d Cir. 1999))). Stein's complaints against his appointed counsel involved differences of opinion on legal strategy and the risks of admitting ownership over a car in which evidence of a crime was found. The record does not demonstrate that the disagreements between Stein and his attorney rose to the level of a conflict that necessitated the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Because Stein fails to demonstrate that the state appellate court unreasonably applied federal Supreme Court law, Ground One should be denied as meritless.

### E.  Grounds Two and Three are Meritless

In Grounds Two and Three, Stein asserts that his trial counsel was ineffective. In order to prevail on a claim of ineffective assistance of counsel, Stein must satisfy the two-prong test set

forth in *Strickland*, 466 U.S. at 687. First, he must demonstrate that his counsel's performance was deficient. *Id.* This first prong requires Stein to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Next, Stein must establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Stein must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694, 104 S.Ct. 2052.

### 1. Ground Two

Ground Two alleges that trial counsel failed to provide effective representation by failing to object to hearsay testimony of state's witnesses: Officer Barker; Megan Donnelly; and officers testifying about Stein's co-defendant. The state appellate court is the last court to have reviewed Stein's argument on the merits. There, the appellate court stated:

> {¶ 38} In his second assignment of error, Stein argues that appointed counsel was ineffective for failing to object to testimony, which he argues was hearsay. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).
>
> *A. Officer John Barker's Testimony*
>
> {¶ 39} On appeal, Stein argues that appointed counsel was ineffective for failing to object to statements made by Officer John Barker of the Grand Lake Task Force, in which he stated that several unknown sources had informed him that "Mr. Stein was bringing methamphetamine into the area and selling it locally." (Sept. 6, 2017 Tr. at 393). For its part, the prosecution argues that the statements were made during Officer Barker's testimony regarding the Task Force's on-going investigation of Stein and the pole camera surveillance, and therefore was offered to explain police conduct and not offered for the truth of the matter asserted.

32

The statements highlighted by Stein on appeal appeared in the following context at trial.

> Prosecutor: Okay. Were you involved in an investigation regarding a Scott Stein?
>
> Officer Barker: Yes, I was.
>
> Prosecutor: We're here today to talk about some incidents that start on November 9th and November 10th of 2016, correct?
>
> Officer Barker: Correct.
>
> Prosecutor: All right. But you were familiar with Mr. Stein before that?
>
> Officer Barker: Yes.
>
> Prosecutor: And I want to talk about that. Let's talk about as it relates to how you assisted that day, okay?
>
> Officer Barker: Okay.
>
> Prosecutor: All right. So in general, how were you familiar with him?
>
> Officer Barker: We had received information that Mr. Stein was bringing methamphetamine into the area and selling it locally. Several sources of information was [sic] provided to us. Some people knew Mr. Stein by name, some referred to him as a truck driver with an unknown name, that would bring methamphetamine into the area.
>
> Prosecutor: And is it routine for you to get tips like that when you're working Task Force?
>
> Officer Barker: Yes, it is.
>
> Prosecutor: What do you guys do with those?
>
> Officer Barker: We begin investigations. Sometimes it's very difficult, because we'll go and sit in a certain area and watch a place for hours upon hours upon hours, and nothing ever happens. Sometimes we get lucky and see a possible drug transaction take place right in front of us

33

while watching, and sometimes most of them turn into long-term investigations.

Prosecutor: Okay. And was this one of those?

Officer Barker: Yes.

Prosecutor: All right. And so this was a long-term investigation. You guys were taking this seriously?

Officer Barker: Yes.

Prosecutor: And what, if anything, specifically did you do that becomes relevant in our investigation?

Officer Barker: We began doing video surveillance of the residence at 719 South Elm Street.

Prosecutor: You determined where he lives?
Officer Barker: Yes.

Prosecutor: And tell me how you did this video surveillance?

Officer Barker: We used a camera, placed it on a pole, not on the residence, but on public property, and gave us a view of the front of the residence, so we could—there was no alley to this residence. All it had was a front, street-facing residence. And we were able to see traffic come and go from that residence.

(Sept. 6, 2017 Tr. at 392–95).

{¶ 40} As a general rule, a statement offered to explain a police officer's reasons for conduct while investigating a crime does not constitute hearsay. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 24, 995 N.E.2d 1181, citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980); *see also State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, ¶ 13. However, "[t]he conduct to be explained should be relevant, equivocal and contemporaneous with the statements[, and] such statements must meet the standard of Evid.R. 403(A)." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist. 1987).

*Analysis*

34

{¶ 41} We disagree with the prosecution that all of these statements were necessary to explain how the Task Force came to place this location under surveillance with a pole camera. On the contrary, rather than focused on the property location, these statements clearly insinuate that Stein had a reputation on the streets as a known trafficker of methamphetamine in the area, and accordingly implicate Stein as having prior propensities for the most serious offense tried before the jury. Even if the statements were not offered for their truth, the content had potential for misunderstanding by the jury and should have been excluded under Evid.R. 403(A).

{¶ 42} More importantly to the assignment of error, we fail to see how it could have been sound trial strategy for appointed counsel not to object to these statements and request a limiting instruction to the jury. However, given the additional legitimate evidence in the record essentially establishing the same allegations, it is unreasonable to believe that a juror would rely solely on two hearsay statements, made over the course of three days of testimony, in reaching the jury's verdict. Therefore, even though it may have been error for appointed counsel not to object to these statements, we cannot find that but for appointed counsel's failure to object on this basis, there is a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

*B. Megan Donnelly's Out-of-Court Statements*

{¶ 43} Stein also argues that appointed counsel was ineffective for failing to object to law enforcement witnesses who testified to Megan Donnelly's statements, and to Donnelly's testimony regarding her prior consistent statements to law enforcement at trial. Specifically, Stein argues that the testimony constituted inadmissible hearsay and was unfairly prejudicial to his case because he contends that the statements were only introduced to bolster Donnelly's credibility.

*C. Donnelly's Testimony at Trial*

{¶ 44} Donnelly herself testified at trial regarding her relationship with Stein. Specifically, she identified Stein in the courtroom and stated that she became acquainted with him during the Summer of 2016 because he was her "drug dealer." (Sept. 6–8 2017 Tr. at 203). She explained that after her husband "kicked [her] out," she began living with Joseph Brown. (Id. at 207). Brown initially gave her money which she used to buy drugs from Stein. Eventually

Brown stopped giving her money and she then turned to stealing items from his home, which included firearms, and traded them for drugs from Stein. At trial, she identified the firearms that she stole from Brown and gave to Stein in exchange for drugs.[ ]

{¶ 45} Donnelly recalled discussions with Stein regarding a trip to Nevada for the purpose of purchasing a large amount of methamphetamine. Stein subsequently bought her a plane ticket. Donnelly explained that she owed Stein, specifically she stated that, "[H]e had fronted me a large amount of meth that I could not pay for, so I knew that if I went that would be—we would be even." (Sept. 6–8 2017 Tr. at 216). According to Donnelly, once in Las Vegas, Stein rented a car and they drove to Laughlin, a city on the Arizona–Nevada border. There, they met a man named Herb. Stein told Donnelly "he was going for a walk" and left her with Herb. (Id. at 219). Donnelly then waited for Stein at a casino hotel room because Herb became "aggressive and very inappropriate." (Id.).

{¶ 46} Thirteen hours later, Stein returned with a large amount of methamphetamine. She recalled seeing the four, gallon-sized Ziploc bags containing meth in a black "bookcase" with white lettering.[2] (Sept. 6–8 2017 Tr. at 224). Stein indicated that he had driven to Los Angeles with a girl named "Jessica." (Id. at 221). Stein and Donnelly then went to Jessica's house where Stein attempted to trade some of the drugs for a car so he did not have to rent one. However, Stein could not get the title transferred in a timely manner, so he rented a different vehicle, a white Ford Expedition, to drive back to Ohio. Donnelly and Stein hid the drugs still contained in the Ziploc bags and black bookcase in the back quarter panels of the new rental car. Donnelly recalled that they only drove back to Ohio during the day and stayed in hotel rooms at night. She remembered Stein receiving several phone calls during their return to Ohio from people anxious for Stein to return. One of which was from a woman "who said she was being questioned from the Grand Lake Task Force, and she would tell him what he needed to know for $5,000." (Id. at 216).

{¶ 47} Once they arrived to Ft. Wayne, Indiana, they stopped to buy digital scales and then continued on to Mercer County, Ohio, and they again stopped to divide the methamphetamine into smaller amounts. She remembered Stein putting some of the meth into a coffee cup with a bag inside for her "as payment" for traveling with him. (Sept. 6–8 2017 Tr. at 227). They also switched positions in the vehicle with Donnelly driving into Mercer County. She testified that Stein directed her to pull over somewhere near

his home, grabbed the black bookcase containing the drugs, and exited the vehicle around midnight on November 9, 2016.

{¶ 48} Before they left Donnelly was staying in a motel room in Wapakoneta. While they were driving back to Ohio, Stein suggested that she change motels because she had an outstanding warrant issued by the Wapakoneta Police Department. She drove back to the Wapakoneta motel to gather her things. Meanwhile, Stein had left her money for another motel room with an attendant at a nearby gas station. Donnelly eventually drove to the Budget Inn in Botkins, in neighboring Shelby County, where she was arrested by the Chief of Police there. Donnelly recalled being questioned by law enforcement. She explained that she knew it was in her interest to "tell the truth" because "the jig was up" and relayed the details of the prior days' events to law enforcement. (Sept. 6–8 2017 Tr. at 237). Donnelly further stated that she had pending charges against her in Mercer and Shelby Counties stemming from her involvement with Stein.

{¶ 49} Following her testimony, law enforcement officers were permitted to testify to the statements that Donnelly had made to them after she had been arrested regarding the trip she took with Stein to Nevada—specifically, that there they had obtained a large amount of methamphetamine and brought it back to Ohio.

*Analysis*

{¶ 50} In reviewing the instances cited in the record by Stein in the context in which they appear, it can reasonably be concluded that the testimony from law enforcement regarding Donnelly's statements were offered to explain further investigative steps, rather than introduced for the truth of the matter asserted. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 24, 995 N.E.2d 1181. Moreover, each instance of law enforcement testimony cited by Stein occurred after Donnelly testified from firsthand knowledge of the same matters at trial and the jury had already heard her version of the events.

{¶ 51} We further note that on cross-examination appointed counsel questioned Donnelly extensively about her lengthy criminal history, which included several offenses bearing on her character for truthfulness, presumably to diminish the appearance of her credibility in front of the jury. It is axiomatic, that the weight given to the evidence and the determination of the credibility of the witnesses are within the province of the jury. *See*

> *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.
>
> {¶ 52} Even if the testimony regarding Donnelly's prior statements were inadmissible "[c]ompetent counsel may reasonably hesitate to object to potential errors in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Howell*, 5th Dist. Delaware No. 15 CAA 12 0098, 2016-Ohio-7749, ¶ 39. Thus, appointed counsel's failure to object may have been sound trial strategy. In any event, the admission of Donnelly's prior statements to law enforcement was harmless beyond a reasonable doubt in view of other evidence establishing Stein's guilt. *See State v. Clinton*, ⸻ Ohio St.3d ⸻, 2017-Ohio-9423, ⸻ N.E.3d ⸻, ¶ 129, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 33, 24 N.E.3d 1153. Accordingly, for all these reasons set forth above, the second assignment of error is overruled.

*Stein*, 2018-Ohio-2345, ¶¶ 38-52

Respondent argues that the appellate court properly applied *Strickland* when it ruled that it was unreasonable to believe that the admission of the statements had any impact on the jury given all of the other evidence establishing Stein's guilt. (ECF No. at 34). Stein argues that the appellate court improperly found that the hearsay statements did not prejudice him. (ECF No. 13 at 9-10). The Court agrees that the appellate court reasonably applied *Strickland*.

For federal court to find state court's application of Supreme Court precedent "unreasonable," warranting federal habeas relief, the state court's decision must have been more than incorrect or erroneous; the state court's application must have been objectively unreasonable. *Wiggins*, 539 U.S. at 520–21 (quoting *Lockyer*, supra, at 75, 123 S.Ct. 1166 and *Williams*, 529 U.S., at 409, 120 S.Ct. 1495).

Here, the appellate court properly cited to *Strickland* (*Stein*, 2018-Ohio-2345, ¶ 32) and applied *Strickland*'s two-part test (*id.* at ¶ 50-52). The state appellate court reasonably concluded that Stein could not satisfy *Strickland*'s prejudice prong with regard his counsel's decision not to

object to the testimony. The appellate court found that "given the additional legitimate evidence in the record essentially establishing [that Stein was bringing methamphetamine into the area and selling it locally], it is unreasonable to believe that a juror would rely solely on [Officer Barker's] two hearsay statements, made over the course of three days of testimony, in reaching the jury's verdict." *Stein*, 2018-Ohio-2345, ¶ 42. The appellate court also pointed out that the statements made by law enforcement regarding Donnelly's prior statements were "offered to explain further investigative steps, rather than introduced for the truth of the matter asserted" and that each statement occurred after Donnelly had testified from her firsthand knowledge regarding the same matters. *Id*. at ¶ 50-51. Further, the appellate court noted that "in view of other evidence establishing Stein's guilt" the admission of Donnelly's prior statements by law enforcement was harmless "beyond a reasonable doubt." *Id*. at ¶ 52. These conclusions are entitled to AEDPA deference—Stein cannot obtain habeas relief unless he can show that the state appellant court's determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond the possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Petitioner does not address that standard. Indeed, Stein does not explain how the appellate court unreasonably applied this test; he merely argues that the court came to the wrong conclusion. (*See* ECF No. 13 at 10). Nevertheless, when § 2254(d) applies, a federal habeas court must analyze if there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 562 U.S. at 105.

Because the state appellate court's prejudice determination was reasonable, and Stein does not demonstrate that it is not, Stein has not shown that the state appellate court erred when concluding that Stein did not satisfy *Strickland's* prejudice prong. Ground Two should be denied as meritless.

2.   Ground Three

In Ground Three, Stein asserts that his trial counsel was ineffective for failing to stipulate to the evidence of a pending indictment for a violent offense in another county. Instead, counsel allowed the prosecution to admit the indictment as an exhibit, which allowed the jury to review portions of the exhibit that contained improper character evidence, thereby unfairly prejudicing him. The state court of appeals agreed with Stein that his counsel should have objected to *portions* of the indictment being presented to the jury, but found that Stein was not prejudiced by their admission:

> we do not concur with Stein that a full stipulation as to the content of the indictment or a motion to sever were the only avenues available to appointed counsel to avoid the admission of this propensity evidence. Moreover, once again, we fail to see a legitimate trial strategy in appointed counsel choosing not to raise *any* objection to the introduction and admission of the entire language and allegations of the Logan County indictment. Certainly there were other strategies that could have been employed that would have preserved the defense's challenge to the service of the indictment without permitting the jury to see the details of the allegations listed in the Logan County indictment, which on their face plainly demonstrate a substantial danger of unfair prejudice. *However, given the overwhelming evidence establishing Stein's guilt, we cannot find that Stein satisfied his burden in demonstrating that but for appointed counsel's actions with respect to the Logan County indictment, there is a reasonable probability that the result of the proceedings would have been different.* Accordingly, we conclude that Stein has failed to establish that his trial counsel was ineffective on this basis and we overrule the third assignment of error.

*Stein*, 2018-Ohio-2345, ¶ 57 (emphasis added).

Respondent argues that the court of appeals properly apply *Strickland*. (ECF No. at 43). Stein argues that the appellate court "ignore[d]" the prejudicial effect of the character evidence within the indictment and that "six [sic] circuit recently affirmed the harmful effects of 'prior bad acts' as it relates to the fundamental [sic] fairness of a fair trial and made clear that such error

was not harmful [sic] but was plain and prejudicial." (ECF No. 13 at 11). Stein does not include a case cite.

To prevail on an ineffective assistance claim, the defendant must show that counsel's performance was constitutionally deficient and that it prejudiced him, "render[ing] the trial unfair and the result unreliable." *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009). Here, the "error" upon which Stein bases his claim was counsel's failure to stipulate that he has been under indictment of an offense of violence when he was charged in this case with weapon under disability and, instead, allowed the introduction of the other county indictment, which he argues included prejudicial character evidence. Even assuming that Stein's counsel was deficient, Stein has not shown that he was prejudiced by his counsel's performance. The trial judge properly instructed the jury as to the permissible use of such evidence and instructed the jurors not to consider the indictment as character evidence: "Evidence was received that the Defendant was under indictment for another offense. That evidence was received, because said indictment is an element of the offense charged. It is not received, and you may not consider it to prove the character of the Defendant, in order to show that he acted in conformity with that character." (ECF No. 9-2 at 637). "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Moreover, the Ohio Court of Appeals held that "given the overwhelming evidence establishing Stein's guilt, we cannot find that Stein satisfied his burden in demonstrating that but for appointed counsel's actions with respect to the Logan County indictment, there is a reasonable probability that the result of the proceedings would have been different." *Stein*, 2018-Ohio-2345, ¶ 57. Thus, even if counsel's decision could be considered "error," it could not be said to be of such weight that "the result of the proceeding would have been different" without it. *Strickland*, 466 U.S. at 694.

Stein has failed to demonstrate that he suffered prejudice from his counsel's performance and, thus, has not meet his burden under *Strickland.*. Accordingly, Ground Three should be denied as meritless.

### F.  Conclusion

As set forth above, Grounds One, Two, and Three of Stein's petition should be denied as meritless; Grounds Four, Five, Six, and Seven should be dismissed as procedurally defaulted.

## VII.  Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

Stein's grounds for relief are procedurally defaulted and meritless. If the Court accepts the foregoing recommendation, then Stein has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII.  Recommendation

Stein has presented only procedurally defaulted and meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: September 25, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

———————————————————————————

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).